**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ELAINE G. KOBIALKA** | **:** | **CIVIL ACTION** |
| **V.** | **:** | **No.:** |
| **WALMART, INC.** | **:** | **JURY TRIAL DEMANDED** |

**COMPLAINT**

**I. PARTIES**

1. Plaintiff, Elaine G. Kobialka, is an adult individual who is a citizen of Pennsylvania and resides at 450 Kingwood Road, King of Prussia, Pennsylvania.

2. Defendant, Walmart Inc., a Delaware corporation with its principal place of business in Bentonville, Arkansasas is a publicly held corporation and a citizen of Arkansas and Delaware for Diversity of Citizenship purposes. It has its principal place of business at its Headquarters located at 1 Customer Drive, Bentonville, AR 72716.

**II. JURISDICTION AND VENUE**

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. Plaintiff is a citizen of Pennsylvania. Defendant is a citizen of both Arkansas and Delaware.

5. Venue is proper in the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(b), as the events giving rise to the claims occurred at the Walmart retail store located at 650 South Trooper Road, Norristown, Montgomery County, Pennsylvania in the Eastern District of Pennsylvania, which is within this judicial district.

## III. CAUSE OF ACTION - NEGLIGENCE

## IV. FACTS

6. Defendant, Walmart Inc., (hereafter Defendant) owned, operated, possessed, maintained, staffed, controlled, and managed the Walmart retail store located at 650 South Trooper Road, Norristown, Pennsylvania.

7. On December 7, 2024, between 6:00 AM and 7:00 AM, Plaintiff was present inside Defendant's store referenced above as a business invitee for the purpose of shopping for personal care items.

8. Plaintiff was walking through the area of the Walmart, Inc. store identified in paragraph 6, near the mouthcare aisle when she encountered a hazardous condition on the floor consisting of a slippery substance.

9. The hazardous condition existed in an area where Defendant's agents servants, and employees were stocking merchandise and utilizing carts, shelving equipment, and related materials. These people should have realized the dangerous condition existed because it was obvious by the material and stocking operation then present that these agents, servants, and employees had sufficient time to discover the danger; clean up the danger; warn invitees of the danger; block or barricade customer access to the danger, so as to prevent the harm that occurred.

10. Plaintiff was forced to maneuver around products to be stocked and merchandising equipment located in the aisle.

11. As Plaintiff proceeded through the area, her foot slipped on a slippery substance and her leg went out from under her, causing her to violently fall to the floor.

12. Defendant by and through its agents, servants, and employees on duty on that date and time knew or, through the exercise of reasonable care, should have known of the hazardous condition and failed to correct it, remove it, barricade it, or adequately warn customers of its presence.

13. Defendant by and through its agents, servants, and employees was negligent in one or more of the following respects:

a. Permitting a slippery, and dangerous substance to remain on the floor;

b. Creating the hazardous condition;

c. Failing to timely inspect the premises;

d. Failing to discover and remove the hazardous condition;

e. Failing to warn invitees of the hazardous condition;

f. Permitting stocking operations and merchandise-handling activities to create an unsafe condition for customers;

g. Failing to restrict customer access to the dangerous area;

h. Failing to implement and enforce reasonable safety procedures;

i. Failing to maintain the premises in a reasonably safe condition; and

j. Failing to have safety procedures, proper training, and policy and procedures that allowed the dangerous presence of a slippery substance to be on the floor of the store; and otherwise violating duties owed to business invitees under Pennsylvania law.

14. As a direct and proximate result of Defendant's negligence, Plaintiff sustained severe bodily injuries, medical expenses, wage loss, pain, suffering, disability, embarrassment, humiliation, disfigurement, loss of life's pleasures, and other compensatory damages.

15. Plaintiff suffered injuries as follows:

a. The fall caused a serious left lower extremity hip fracture injury and hospitalization, surgery, pin fixation, and inpatient rehabilitation,

b. Plaintiff was required to have subsequent home health care, outpatient physical therapy, neurological evaluation, EMG testing, MRI studies, and prolonged disability from employment. Despite treatment, Plaintiff continued to experience pain, numbness, tingling, cramping, foot dysfunction, gait abnormalities, limitations with standing and walking, and need for a cane.

16. Plaintiff from a pain and suffering standpoint Plaintiff reported:

a. For the first three months severe impairment in virtually every major functional category. She indicated that pain medication provided very little relief; she required substantial assistance with personal care; could lift only very light objects; could walk only with a cane or crutches; could sit no longer than approximately ten minutes and stand no longer than approximately ten minutes; was obtaining less than two hours of sleep even with medication; and had essentially no social life because of pain; and she could travel only for medical treatment.

b. By March 2025 Plaintiff's complaints and condition had improved modestly, Plaintiff continued experiencing substantial disability. She reported significant pain, ongoing need for assistance with personal care, walking only with a cane or crutches, reduced sitting and standing tolerance, limited sleep, restricted social activity, and continued limitations on travel.

c. By early June 2025 Plaintiff reported some additional improvement, including better personal-care abilities and increased sitting and standing tolerance. However, she still reported significant pain, inability to lift more than very light weights, severe walking limitations requiring assistive devices, impaired sleep, restricted social activities, and continuing functional impairments affecting everyday life.

d. Plaintiff alleges as consequential-damages that her impaired walking condition caused a subsequent fall at home on June 13, 2025 fall. The medical records reflect that before the June 2025 fall, Plaintiff continued to suffer unresolved left-leg dysfunction following the Walmart injury in December, 2025. During the June 13, 2025 incident, Plaintiff had reported that her previously damaged left leg caused her left foot to be caught while ascending a step, causing her to fall. The June 13, 2025 emergency department records specifically note that she had pre-existing unresolved issues involving the left hip and further recorded her statement that this type of event occurred "from time to time due to hip issues." On June 13, 2025 Plaintiff sustained a right femoral neck fracture requiring hospitalization, surgery on the right hip, pain management,

weight-bearing restrictions, rehabilitation, and additional and permanent disability.

17. Plaintiff asserts that as a direct and foreseeable consequence of the negligence of the Defendant, and its agents, servants, and employees the injuries sustained as set forth above were factually caused by the Walmart fall on December 7, 2024.

18. Plaintiff has continued to suffer substantial gait abnormalities, weakness, sensory deficits, and loss of functional control of her left lower extremity up to and including the present, and will likely be permanent.

19. Further, these deficits contributed to her subsequent fall on June 13, 2025, resulting in a fracture of the right femoral neck (right hip), and aggravation of those injuries referenced above in paragraphs 15 through 18, as well as the consequent additional injuries and worsening of those already injured conditions

**WHEREFORE**, Plaintiff demand judgment against the Defendant in an amount in excess of Seventy Fifty Thousand ($75,000.00) Dollars, as well as an amount above the Federal Arbitration limit in this jurisdiction, plus interest, and costs as the law may allow.

Respectfully Submitted,

Frank P. Murphy, Esquire
Attorney for Plaintiff, Elaine G. Kobialka